Could you call the next case please. 309-108 Enraged Marriage of Rod Samardzija Appellee by Thomas Boundas versus Lily Samardzija Appellant by Royce Boomerang Mr. Boundas? That's correct. Good afternoon. Let the counsel, if that's okay. Good afternoon, Justice. As you are aware, this is, I would call it, Samardzija II. It was Samardzija I which was decided by this. And I noticed there was one justice on that panel as well, Justice McDade. With respect to that opinion, there are two issues on the remand that we've raised in our appeal.  And it's our position that the remand language which was related to the Samardzija opinion directed the trial court to take a new value of the marital home by the plain English in the opinion itself. And the Samardzija I opinion stated, we were remanded for recalculation of the home's value and for determination by the court regarding any credit due for contribution of non-marital funds. Now, I've applied this with respect to IMDA 503-H. 503-H provides that the trial court must take a new value if it is directed to do so by the reviewing court and the mandate of the reviewing court. Our position is that this language directed the trial court to take just such action and the trial court denied our request to introduce additional evidence regarding the value of the home. Although an appraisal was done, it was allowed after being briefed the issue of the value of the home and the applicability of additional evidence at the hearing, Judge Barron denied that request on June 27, 2007. And that is one of the two orders that we are in fact appealing. There are several cases that we did cite where evidence of increased value or differential value as to the time of judgment were in fact allowed and where in fact the trial court did do just that as required. Now, the issue in this case, however, is that all those other cases, there really wasn't any direct language pursuant to 503-H where you could point to and say the appellate court said do this. It was mainly those cases are upon the second portion of that, which is a 503-H, which is upon good cause shown, the court shall not on remand consider any increase or decrease. So the court can, upon good cause, do it on their own. In most of those cases that are cited in most of the reported opinions, that's the circumstance. I can only look to the language that's in the mandate, and the language in the mandate specifically says a new value. When you look at the plain English language of that and you break it down into its grammar, you can only come to one conclusion. To recalculate the value of an asset, you must value the asset. You're recalculating a value. Well, the trial court already had a value. That value was placed. That value was part of Samarja I. So what would be the point of saying recalculating the value? But the court called it non-marital, so it wasn't valued as marital. Understood, but it didn't say to recalculate. It didn't say to reallocate, which in my opinion would have been the proper language if it didn't consider a new value. That would have been a reallocation of the equity that was determined at trial. That's a different issue than a recalculation, in my opinion, on the English, of the actual value of the parcel itself. But an appraisal wouldn't be a recalculation. An appraisal would not. We were seeking to have additional evidence as to the recalculation of the value by presenting evidence as to the value of the property at the time. What time? The time of the hearing, the remand hearing. The direction, the mandate of the court was to remand with instructions of the trial court to hold proceedings relative to the recalculation of the value of the asset. What was the date of dissolution? The date of dissolution, I believe, was in 05. So you were hoping to offer evidence of value after the date of dissolution? That is correct, and that's what 503H provides for us. 503H specifically says that if it's directed by the reviewing court, that the evidence of additional value can come in. So your argument rises or falls on the language that the court used in the prior order? Absent direction from the appellate, absent direction from this appellate court to do just that act, yes. My argument relates to 503H in the plain language of the mandate in that case. On that argument. You're reading of the plain language. Yes, and looking at the totality of the case. But yes, I think the recharacterization of the property is marital. Now makes this property hers as much as his. So it stands to reason, why should she not benefit from a payout? She hasn't gotten a payout on this property yet. Why should she not benefit from the value? Let me ask you, since you brought that up. Okay, let's say it's all marital property. Yes. Is there any legal requirement that the judge divide the equity equally? There is not, and I'm not saying. Because he can take in, account other transfers. In fact, not only can, but should look at the whole picture. And that's not part of our argument. Our argument doesn't rely on the fact that it can be divided equally or inequally. In fact, the appellate court mandate said that they're not bound by the original judgment in terms of percentage. So that's not the issue. The issue is, as in a lot of divorce judgments, the value of a residence may not be taken into account until the buyout period. Or the buyout time, whenever that may be. Values don't necessarily need to be ascertained if there's going to be a future buyout. But once it became a marital piece of property, that general trend, or a way of dividing the asset, should have been applied. And it's fairly common, as I'm sure you've seen in many cases, for a judgment to say, at a certain point in time, somebody can either buy out the other party's interest in the residence, and or refinance the interest at a stated value in the future to get that party out their interest. Well, this is no different. The difference was, the trial judge considered it non-marital at that point. So what does it matter? She would not get any appreciation, or anything, no matter when she was paid out. She wouldn't get any judgment. She wouldn't get anything. However, if it's her parcel, her investment, it's no different than if she was awarded a thousand shares of G.E. stock. And I'm not arguing if it goes down on our appraisal. It goes down on our appraisal. We just wanted the right to present the evidence relative to the current value at that time. It's like stock. She was awarded a thousand shares of G.E. stock, and the trial court said, on that day, it's worth a thousand dollars. But the transfer wasn't effectuated for a year later. She gets a thousand or the $1,200 that it went up to. She gets the appreciation of the value of the asset that was a marital asset that went up in between the time that she gets the money. So that's our argument with respect to 503H and that order that was entered in 07. So what date do you want it evaluated at? Well, we wanted it to be as of the date of the remand here. Which was? Well, it would have been the date that the second order was entered, which was in 08. Great. When do you want it evaluated now? It keeps going. It's still marital property. Now, in my theory, at some point, we have to have this property valued for her interest in the property as it's appreciated or depreciated. And you're right. There is a current market decline. I understand. And that's why I'm saying my argument is it works both ways. I'm not seeking to cut to something that I think may be a hugely appreciated asset. And I haven't run a current valuation. I know when I started the actual remand here in portion of it in 07, it may have been a different story. But that is the argument that we're for profit. Let me understand your argument. If Justice Slater had written, we remand for reallocation of the home's value, you would not be here today. If the opinion had said reallocation of the value determined at trial, I think you need to specify what value and the valuation date. And if you don't do that, it's an open question at worst. At best, for my client, would be the actual language, the value. And if you're telling a remand in court to determine the value and they've already determined it, they have to determine it at a different time. Why would you use the word value if, in fact, the value had already been determined? Or Justice Slater could have just said to reallocate or reevaluate based upon the value as of the date of trial. He had to use the word value no matter what. Yes, but he had to use the word value as of the date of trial. There would be no issue. But to recalculate a value, why would you need to recalculate a value? The asset had a value in the judgment. The asset had a value on appeal. But to recalculate something, if you already have the value, why would you need to recalculate it? That's my quandary with the wording. Okay, I understand your argument. Okay, now, with respect to argument number two, argument number two, independent of argument number one, deals with the evidence that was actually put in the trial and its abuse of discretion standard. Argument number two relates to basically the fact that now that it became a merible asset, the court has to take a different look. At how this money gets allocated. Or calculated. Or calculated. And I think the way that it has to be done is set according to case law. And basically you have to look at first, number one, this court found that that asset was transmuted. It made it merible property. So now there's a presumption that must be met by Mr. Samarja relative to that piece of property if he wants any reimbursement for a non-meritable. First he has to meet one hurdle. And that hurdle is the presumption of gift. It's a two-prong test. If you don't get past presumption of gift, you don't even get to the traceability issue. And I think both counsel and I agree that that's in the remarriage of Van Ness. And I cited it in my brief, 136 ill at third, 185 at 188. Relative to the fact that even if a contribution is clearly traced, the contributions deemed gift are not reimbursed. So even if he traced it, it doesn't matter if he hasn't met that presumption. Both counsel and I, in our brief and his proclivity, use the Gatone standard. Because I think that's a recognized standard relative to the criteria that the court has to use in determining whether or not a gift was intended. And it's a four-prong test. I've set forth the four prongs in the brief. I've set forth citations to the record relative to what the issues are with those four prongs and how they would relate in favor of one party or the other. I think it's clear that most of those relate in favor of my client. The gift at issue, we're looking at $112,500. The size of the total bearable and non-bearable estate was $960,000. The majority of that being Mr.'s non-bearable estate. A lot of it being the grump stock that he was awarded. So if you look at that with respect to the overall amount, it's a very small amount in terms of his non-bearable estate. Which would weigh in my client's favor. Item two is the control of the property, the purchase price, the improvements made. And I've outlined that with respect to how the loan was repaid out of income, who picked out things with respect to the property. And I've made citations to the record. Number three is when the asset was purchased. Although the original land was purchased prior to the marriage, the vast majority of the value that was determined was created as a result of the improvement to the property, vis-a-vis a house being built on it. The last one is the prior financial dealings of the parties. And clearly, the prior financial dealings show that Mr. Smargent deposited large chunks of money into joint accounts and that it was intended to go into joint accounts. This was also a personal residence that was going to house his family. Now, one very important thing with respect to this case on the gift issue is there's not one statement in the record where Mr. Smargent actually said he did not intend any of this money to be a gift to the marriage. That was never stated, the question was never asked, and was never posed to him. I think that's very important. Number two, one of the things that you would look to is whether or not he had disposed of his assets in a differential manner other than by will, but not giving the property to her. There was no such evidence with respect to that. All of this taken into account, he has not met his burden relative to gift. Now, with regards to the traceability issue, which I'll get into very quickly, I think that's very clear that the evidence in this is that he paid off his alleged loan, which by the way, there's no documents for the loan. There's only testimony about such a loan. There's no loan recorded. There's no mortgage recorded. There's nothing. And even by Mr. Smargent's own testimony, this was a tax reason. Mr. Smargent's own accountant came in and said basically we paid him in certain respects because of tax ramifications on the corporation. And I also take issue with the fact that his compensation was, in my opinion, under-compensated for what type of corporation this was and what it did. It's a $6 million grossing corporation. He's making $75,000 a year. Thank you. Did you have a sentence you wanted to finish? My sentence was it's a $6 million corporation. He's making $75,000. And then he almost doubles that in his profit bonus. And the accountant testified that that was basically an accounting move for the corporation to derive a benefit from that. So if he's adequately compensated by his personal labors, then theoretically those profit bonuses would apply to his non-barrel estate. However, if he's being under-compensated and then they just apply these profit bonuses for whatever corporate maneuvers they want to do and to get him his real salary, then that is a barrel asset. That's his income that paid this alleged loan even if he found that the loan was there. Okay. Thank you. Mr. Sabuco? Good afternoon. Good afternoon. I'm here to support Justice Bates, Justice Reich. My name is Roy Sabuco. I represent Rod Samardzic, who was depleted in matching for the dissolution of his marriage with Lily Samardzic that was tried before Judge Barron in Will County in 2003. The values of the property and assets that were presented were basically 2003 values. Judge Barron made a determination that certain of those assets were marital and non-marital. In the first appeal of this matter, this court made a determination that Judge Barron's characterization of the former marital residence as Mr. Samardzic's non-marital property was erroneous and remanded the case on that issue for, quote, recalculation of the home's value and for determination by the trial court regarding any credit due for contributions of non-marital funds. So in very simple language, what the court did in the first appeal was change the nature of the residence from non-marital to marital. The court also specifically ruled and made findings that certain of the findings that Judge Barron made concerning the nature of non-marital contributions would be affirmed, and the court found that there was no error in those findings. So counsel has indicated to this court that really what we're talking about is the plain language of the remand, and did Judge Barron follow the plain language of the remand when he refused to accept any additional new evidence as to the value of the property? And counsel says the language in the court's initial opinion in this case is crystal clear. I beg to differ. Judge Barron found that it did not require the taking of new evidence for two reasons. The remand, contrary to 503H, which Mr. Baum has quoted, did not specifically direct the trial court to accept new evidence. This court must take into account the circumstances surrounding that decision. When the court made a determination, and Justice McVeigh was on that panel, when the court made that determination that Judge Barron was in error in characterizing the residence as non-marital property, it required a redetermination by the trial court of how the now marital asset would be divided, which would require a recalculation of what amount of money was going to be awarded to Mrs. Samarja. It also required, and you can't just read the first part of that sentence, it also required a determination of what non-marital credits back would be awarded to Mr. Samarja for his non-marital contributions. If you read the totality of that sentence, it appears to me, and it appeared to Judge Barron, that it's very clear that the court was ordering him to make a redistribution of one of the assets that was mischaracterized in his initial decision, and that's exactly what he did. You cannot view that remand without taking into account the 750 ILCS 5-503F or 503H. 503F provides that in determining the value of marital and non-marital property for purposes of dividing the property, the court shall value the property as of the date of trial or some other date as close to the date of trial as practical. That's the general rule, and it makes sense. The purpose of a dissolution of marriage is to distribute the assets and liabilities of the parties. To pick some date in the future to put values on those just doesn't make sense, and it flies in the face of the statute, except in extraordinary circumstances, for example, where one party perpetrates a fraud, conceals an asset, conceals a valuable asset. Then very often the court will take that into account and make a specific order in a remand on appeal and say, we direct the trial court to take evidence as to the value of the property as of such and such a date. That wasn't done in this case. There was no reason to do it. It also fails to take into account Mr. Baum's argument, fails to take into account 503H when it says that on remand, the court shall not consider any increase or decrease in the value of any marital or non-marital property occurring since the assessment of such property at the original trial or hearing, but shall only use that assessment made at the original trial or hearing. And of course, the phrase that Mrs. Margic hangs her hat on here is unless specifically directed by the reviewing court or upon good cause shown. There was no finding by Judge Barron that there was good cause shown, so the only language that the penalty in this case can argue to this court is that the language of the remand specifically directed Judge Barron to use some other date as a valuation date. If it were a specific direction, I submit to this court that it would have had a valuation date. It would have said to Judge Barron, value it as of such and such a date, the remand date, some date subsequent to the determination of the appeal. But certainly, there was evidence in the record that would allow the court to put a proper value on this marital asset and follow the instructions of the court with respect to contributions made from Mr. Samargas' non-marital estate for deductions from the distribution to Mrs. Samargas. The second view that was raised was really too prompt. And part of that has already been decided by this court. In Judge Barron's decision after the remand, he made a determination that there were three basic contributions from Mr. Samargas' non-marital estate to the marital estate, all directed at the residence. That was $103,425, which was a loan from Mr. Samargas' non-marital company, which was repaid from stock bonuses. And there was testimony in the trial court from the CPA, Mr. Samargas, as well as one of the officers of the corporation with respect to the nature and extent of those loans, how they were booked, how they were repaid, and certainly ample evidence for the court to make a determination that these were non-marital contributions. And I point out to this court that this issue was raised in the initial appeal of this case, and the court ruled on that issue and affirmed Judge Barron's determination that those were non-marital transactions and that the funds received from the stock bonuses was non-marital. And I believe that that was directly addressed by the court. In case 7 of the initial decision, where the court discussed the testimony in the trial and found that there was no error in the judge's determination that these profit bonuses were non-marital in nature. So that issue hadn't been decided, and there being no contention that the other two aspects of the non-marital contributions, that being the $61,000 for the value of the lot and the $50,000 from the CD that was contributed by Mr. Samargas to the construction cost, were non-marital. It seems to me that the entire argument that Mrs. Samargas is putting before this court hinges on whether Mr. Samargas rebutted the presumption of gift. There's no question that $61,000 for the lot was paid three years prior to the marriage. Mr. Samargas maintained the real estate, all the real estate, in his name for the entire time of marriage. The lot, even after the house was built, was never transferred to Mrs. Samargas. The certificate of deposit that we're talking about, $50,000, was from the sale of a non-marital residence that took place prior to the marriage. That money was never commingled, it was never removed from Mr. Samargas' name. Mr. Bondis' gift analysis is lacking. To determine whether or not this presumption was rebutted, you have to look at the totality of the circumstances. Mr. Samargas bought a piece of property prior to the marriage, kept it in his own name, never transferred the title to that. That's an indices that he never intended that to be a gift to the marital estate. The loans for the construction of the property were in his name. They were made from non-marital contributions entirely. The $50,000 that was contributed to the construction costs, virtually all of the money that went into the construction of this house, was from direct contributions from Mr. Samargas' non-marital assets, which were never in joint tenancy, never held jointly. And that is, if you take the totality of the circumstances, the best indication that he never intended a gift to that. In fact, the whole theory that was presented in the trial was that it was his non-marital property. This court ruled that there was a transmutation regardless of what his intentions were, that there was a transmutation, but that doesn't bootstrap into his desire to make it a marital asset by gifting those contributions to the marital estate. And there was no evidence ever presented that that was ever his intention. The evidence that has to be presented is evidence from him rebutting a presumption that's raised by law. That's correct. So that's what we have to look at is, not what his intention was, but whether he effectively rebutted the presumption. No, what I'm saying, Justice, is that, yes, of course we have to make that determination that we rebutted the presumption, but what he did is part of the four-prong test for this court to determine whether he rebutted that presumption. And if you look at that, when was the property purchased? Part of this property was purchased before the marriage, so there could be no donated content with respect to that. Who paid the purchase price? Virtually all the construction costs were paid from Mr. Samarge's assets. The size of the gift, the alleged gift, relative to the entire estate. In our brief, we indicate that the percentage is nowhere near the percentage that's been put forth in Mr. Samarge's brief. On similar cases where there's a finding of the gift, nowhere close to the percentage. Is the percentage measured against the value of his total non-marital estate, or is it measured against the value of the entire estate? The entire estate. And more importantly, I think, in this case, is how the parties handled the financial dealings with one another. All the evidence in this case was that Mr. Samarge had a non-marital business. She was not involved, Mr. Samarge was not involved in that. Those finances were completely separate. For the most part, Mr. Samarge had completely controlled the marital assets and the payment of the marital liabilities. And if you use the Hotchinus and Catone standard, which are very similar, and look at the overall facts that were presented here, I think that Judge Barron's finding, by clear and convincing evidence, that these were traceable assets, that there was no intention that there be a gift to the marital estate, is evident. It's not against the manifesto weight of the evidence. And it certainly, the standard of review being what it is in this case, is not something that the court could find that no reasonable trier of fact could find, given the circumstances and evidence presented in this case. Thank you. Thank you, Mr. Sabuco. Thank you. Mr. Bondis. I noted in Mr. Sabuco's argument relative to the first question presented regarding the 503H remand language, he stayed away from the actual words used by the appellate court between the recalculation of the value. He used the words redetermination and distribution. All words that he used in that manner may have been a different outcome, but he chose to stay away from the actual language of the court and use the words redetermination and redistribution. And I think that's telling us the fact that if you read the plain language of that section, you come to the conclusion that you have to value an asset that is in fact both parties' assets at a time when you're actually going to divide that asset. Like I made the analogy to stock, it's no different. It goes up and down and you get the value of the up and down. And the court had to make that determination in order to tell the parties how much they were each going to get out of this joint asset owned by both of them. Then the court, and that's all I will say on that issue because I think we belabored that a little bit, much in the first portion of my argument. Now, with respect to the second problem, I think what's very important with respect to Judge Barron's decision is if you will look at the order entered by Judge Barron relative to the remand hearing and the transcript of that proceeding, he never made a finding that Mr. Samarja rebutted the presumption of a gift. He only took the leap to part two of that, which was I find the following non-marital contributions. He didn't say that requisite evidence was placed into the record by Mr. Samarja rebutting the presumption that that property is marital, as required once the appellate court recharacterized that property and placed it back into the variable estate. That is a very important factor because as I look through the record and the Katone case, and as we go through those problems, I think it's very clear with respect to those problems that there was not enough evidence by him. And even if there was enough evidence, even if there was evidence put in relative to the gift, that evidence weighs in the favor of my client relative to his rebutting the presumption of gift. I think their characterization of the marital assets and the percentage in prong one of the Katone test, I think flies in the face of the Katone test and the other case I believe was Didier that also reiterated the percentage test. I think you have to look at the alleged gift when you're looking at the size of it in relation to the entirety of the estate being divided. To not do so would make it irrelevant. Somebody had $100 million and they gave $100,000 to a marital estate of $150,000. Sure, it's huge with respect to not with the marital estate, but it's minuscule with respect to the non-marital estate and the estate in total. And I think in one of the cases, 44% was held not to be enough. I'm sorry, it's the Guerra case. I believe in one of the cases, 44% was held not to be enough. In one of the cases, and I can't remember the exact percentage because in the Katone case, the actual numbers were issued. However, in our case, if you calculate what the judge is applying, the $112,500 loan into the total, it's still 23%. It's not a humongous amount. It's not a stretch to imagine that somebody would make a gift to the marriage so that his wife and children could live in a nice house in a nice area. That's not a stretch at all. With respect to this, you also have to look, when you look at the improvements that were made, Mr. Samardzi took other affirmative steps to place assets in a joint tenancy and to make gifts in the marriage. He took money from the sale of his other non-marital residence and he put a majority of it into a marital account in both parties' names. That's further the intent of a gift, and that money was used to build this house and the improvements thereon. With respect to that, I think that issue also weighs in favor of my client. Let me ask you one quick question. The counsel brought up the issue regarding the loans and the bonuses that was found the first time by the trial court to be a contribution of non-marital funds to a marital estate. I think that was a different rationale that was utilized when you look at this. And that that was already affirmed? There was an affirmance relating to the profit bonuses as not being a marital asset. However, the fact that it was not an adequate compensation as income, which is a different theory to reach, and then paying off a loan is a different rationale altogether. I don't think it's determinative of the issue had the court been looking at it in this manner. It would be a different analysis. Well, certainly, if the court makes a finding and you think, well, I've got a new theory about why that's wrong, you can raise it. Well, no, I'm not saying it's not a new theory. It's a new theory that was created by another rule within the appellate court. When the appellate court made a characterization theory, you have to look at that money in a different way. That money now is looked at in terms of income and paying off a loan in adequate accommodation. It's not looked at as an asset to be divided. At the trial level, they were looking at that and trying to grasp that money and say, let's divide this money. We're not looking at it in that respect. We're looking at it in a different respect, which is income, not to be divided, but as what paid off a certain loan. So it's a different rationale. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.